## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK – MANHATTAN DIVISION

| | |
|---|---|
| **KEITH HOBBS**, a Georgia resident, individually and as the representative of a class of similarly-situated persons, | |
| **Plaintiff**, | No. 19-cv-5849 |
| v. | |
| **NATIONAL GENERAL HOLDINGS CORP., DIRECT GENERAL CORPORATION dba DIRECT AUTO & LIFE INSURANCE, and LOWER INSURANCE RATES,** | CLASS ACTION<br><br>JURY TRIAL DEMANDED |
| **Defendants**. | |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiff, Keith Hobbs ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed and prerecorded telemarketing calls to cellular telephones without the "prior express written consent" of the called party.

4. Defendants made at least one automated and prerecorded telemarketing call to Plaintiff using equipment prohibited by the TCPA, even though they did not have his prior express written consent to do so.

5.    Plaintiff did not give prior express written consent to receive an autodialed prerecorded phone call on his cellular phone from any of the Defendants.

6.    This case challenges Defendants' practice of initiating autodialed and artificial voice telemarketing calls to cellular telephones without the prior express written consent of the called parties as required by the TCPA. 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

7.    Plaintiff seeks class-wide relief against Defendants for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227. A class action is the best means of obtaining redress for Defendants' illegal calls and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

8.    Defendants' practice caused actual harm to Plaintiff and the other members of the Class in several ways, including temporarily using their cellular phones and tying up their lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiff and the Class because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed their solitude.

## PARTIES

9.    Plaintiff, Keith Hobbs, is an individual and a citizen of Columbus, Georgia.

2

10.     Defendant National General Holdings Corp. ("National General") is a Delaware corporation and insurance holding company headquartered within this federal district at 59 Maiden Lane 38th Floor, New York, NY.

11.     National General operates under the brand name "National General Insurance."

12.     Defendant Direct General Corporation dba Direct Auto & Life Insurance ("Direct General") is a Tennessee corporation headquartered at 1281 Murfreesboro Road, Nashville, TN 37217-2423, and with offices in New York, including locations within this federal district.

13.     Direct General is an operating subsidiary of National General.

14.     National General and Direct General are collectively referred to as "Direct Auto Insurance."

15.     Defendant Lower Insurance Rates is a web-based company with an agent located at 21 rue Victor Massé, 75009 Paris, France. Lower Insurance Rates owns the website www.lower-insurance-rates.com, an online marketplace that connects insurance companies and service providers to consumers through an online and telephone database.

## JURISDICTION AND VENUE

16.     Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

17.     Personal jurisdiction exists in New York because National General's principal place of business is in New York, a substantial portion of the conduct took

place in New York, each of the Defendants has transacted business and made or performed contracts substantially connected with the State, and Defendants purposely directed activities at residents within the forum.

18.   Venue is proper in the Southern District of New York because National General resides in this District, National General and Direct General are residents of the State for venue purposes, Defendants have sufficient contacts with this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

<u>BACKGROUND AND ENFORCEMENT OF THE TCPA</u>

19.   In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

20.   When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14021 ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were calling 104 million Americans every day, assisted by the proliferation of new and more powerful autodialing technology. *Id.*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

21.   The problems Congress identified when it enacted the TCPA have only grown worse in recent years. The FCC has emphasized that action must be taken to

"stop the scourge of illegal robocalls" because "U.S. consumers received approximately 2.4 billion robocalls per month in 2016." *See* https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## THE TCPA PROHIBITS AUTOMATED AND PRERECORDED TELEMARKETING CALLS

22.    The TCPA requires prior express written consent for all autodialed or artificial prerecorded telemarketing calls to cellular telephone numbers. 47 U.S.C. §227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2).

23.     "The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

24.    "The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i)(A).

5

25.     According to the FCC, "[t]he term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9).

26.     Pursuant to its authority to make rules and regulations to implement the TCPA, 47 U.S.C. § 227(b)(2), the FCC has ruled in a 1995 Memorandum Opinion and Order that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules & Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

27.     On May 9, 2013, the FCC released a Declaratory Ruling confirming that a person or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of … section 227(b) … that are committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574, ¶ 1 (2013) ("*DISH Network*").

28.     A "seller" may be liable for telemarketing activities that it outsources, even if it does not physically place the calls:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party

telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*DISH Network*, 28 FCC Rcd at 6588, ¶ 37.

29.     Finally, the FCC has stated that called parties may obtain "evidence of these kinds of relationships ... through discovery, if they are not independently privy to such information." *Id.* at 6592-93, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*

30.     Under principles of agency and apparent authority, Direct Auto Insurance is vicariously liable for the autodialed and artificial or prerecorded[1] voice telemarketing calls that Lower Insurance Rates placed to the cellular phones of Plaintiff and the Class advertising insurance with Direct Auto Insurance.

31.     Direct Auto Insurance ratified and accepted the benefits of Lower Insurance Rates' autodialed and prerecorded telemarketing calls and it appeared to Plaintiff and the Class that Lower Insurance Rates acted with Direct Auto Insurance's authority when placing the automated and prerecorded robocalls. *See* https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts ("Robocalls are calls

---

[1]     "Prerecorded" shall refer to refer to "artificial or prerecorded voice" calls or messages.

made with an autodialer or that contain a message with a prerecorded or artificial voice.").

## FACTS

32.     Advertising to cellular phones uses the called party's equipment.

33.     Lower Insurance Rates transmitted autodialed and prerecorded calls to cellular phones—those of Plaintiff and the other members of the putative Class—to promote Direct Auto Insurance's products and services without the called parties' prior express written consent.

**A.     Relationship between Lower Insurance Rates and Direct Auto Insurance.**

34.     Lower Insurance Rates offers insurance rate comparison tools to consumers on behalf of insurance companies and service providers.

35.     Lower Insurance Rates contracts with various insurance companies and service providers, including Direct Auto Insurance, to generate business and connect to consumers to offer "competitive" insurance quotes.

36.     Lower Insurance Rates is an "online marketplace, [that is] run by, and work[s] directly with insurance providers to help aggregate the right insurance offers and present them to [consumers.]. *See* www.lower-insurance-rates.com (last visited June 13, 2019).

37.     Lower Insurance Rates acts as an intermediary between insurance companies, such as Direct Auto Insurance, to solicit business.

38.     Lower Insurance Rates solicits business through robocalls that use prerecorded voice prompts to cellular phones.

39.    Once Lower Insurance Rates connects with a consumer through a robocall, Lower Insurance Rates uses prerecorded voice prompts and menu transfer the call to an insurance company, such as Direct Auto Insurance, to generate an insurance quote.

40.    Lower Insurance Rates programs its autodialer menu to transfer a connected call directly to Direct Auto Insurance after the called party answers a series of voice prompts with their information.

41.    Once a call is transferred, Direct Auto Insurance collects additional information from the called party to advertise and promote an insurance quote.

## B.    Lower Insurance Rates called cellular phones on behalf of Direct Auto Insurance using an autodialer and prerecorded voice.

42.    Lower Insurance Rates called Plaintiff's cellular phone using an autodialer and a prerecorded voice to advertise Direct Auto Insurance's "competitive" rates and insurance options on behalf of Direct Auto Insurance.

43.    On August 24, 2018, Plaintiff received two autodialed and prerecorded calls from Lower Insurance Rates that were made on behalf of Direct Auto Insurance.

44.    The first call began with "dead air." Plaintiff answered and said "Hello?" three times before he heard a distinctive "click" and a prerecorded voice introduced himself as "Justin" from Lower Insurance Rates.

45.    After a series of prerecorded voice prompts, which Plaintiff answered with his personal information, "Justin" (prerecorded voice) from Lower Insurance Rates transferred the call to Direct Auto Insurance for an insurance quote.

9

46.     Once the call was transferred, Plaintiff completed an over-the-phone application with for an auto insurance quote with one of Direct Auto Insurance's license insurance agents.

47.     After Direct Auto Insurance provided Plaintiff with an insurance quote, Plaintiff received a second call that same day.

48.     The second call began with a distinctive pause and a "click." After Plaintiff said, "Hello?" a prerecorded voice came on the line:

> Hi there! This is a courtesy call from the insurance network customer satisfaction team. We're calling to confirm that you received a competitive quote from one of our agents. Press "1" is you already received a quote and are satisfied with your experience. Press "2" if you didn't receive a quote or would like to get an additional quote.

49.     Both calls began with a distinctive pause and a "click" after Plaintiff answered. A pause followed by a "click" is evidence of the caller's use of a predictive dialer, which uses an algorithm to "predict" when telemarketing agents will be available to field the call. *See* 2003 Order, 18 FCC Rcd. at 14022, n. 31.[2]

50.     The above facts demonstrate that the calls were made as part of a telemarketing campaign, and that the calls were made using an automatic telephone dialing system ("ATDS") and a prerecorded voice.

51.     The TCPA defines "automatic telephone dialing system," or "ATDS," as "equipment which has the capacity—(A) to store or produce telephone numbers to

---

[2]     "[I] 2003, the FCC expressed growing concern about the proliferation of predictive dialing systems that use "a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that predicts the time when a consumer will answer the phone and the telemarketer will be available to take the call."

be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

52.     "The statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

53.     Lower Insurance Rates used a device that had either: (A) the capacity to call numbers produced using a random or sequential number generator, or (B) the capacity to dial stored numbers automatically. *Id.*

54.     Lower Insurance Rates initiated unauthorized telephone solicitations to the cellular phones of Plaintiff and other members of the Class using an ATDS and prerecorded voice to advertise the availability of a refinance with Direct Auto Insurance without their prior express written consent.

55.     Lower Insurance Rates used an ATDS and prerecorded voice to call the cellular phones of Plaintiff and other Class members to connect them to Direct Auto Insurance in order to encourage them to apply for a refinance or other loan, and did so without their prior express written consent.

56.    Defendants' autodialed and prerecorded voice calls to cellular phones were designed to encourage and offer Direct Auto Insurance's goods or services for sale, including "competitive" insurance quotes.

57.    Plaintiff did not give Lower Insurance Rates or Direct Auto Insurance his cellular telephone number or request that either company call his cellular phone about an insurance quote.

58.    Plaintiff did not expressly consent in writing to receive Defendants' autodialed or prerecorded telemarketing calls to his cellular phone.

## CLASS ALLEGATIONS

59.    Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this action against Defendants on behalf of himself and all other persons similarly situated throughout the United States.

60.    Plaintiff proposes the following class definition:

> All persons in the United States to whom one or more telemarking or advertising calls were initiated (1) to their cellular telephone number, (2) by or on behalf of any or all of the Defendants, (3) using an automatic telephone dialing system or an artificial or prerecorded voice, (4) on or after June 21, 2015, and (5) without their prior express written consent.

61.    Excluded from the class are Defendants, any entity in which any Defendant has a controlling interest, each of their respective officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

62.    The proposed class members are identifiable through phone records and phone number databases.

12

63.     Plaintiff is a member of the proposed class.

64.     The automated technology that Lower Insurance Rates used to call Plaintiff's cellphone is capable of contacting thousands of people a day, and so the potential class members number in the hundreds or thousands, at least. Individual joinder of so many persons is impracticable.

65.     Use of a prerecorded voice and voice prompt menu further increases the scale at which Lower Insurance Rates can make the calls without human intervention.

66.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

        a.      Whether Lower Insurance Rates used an automatic telephone dialing system or an artificial or prerecorded voice to call the cellular phones of Plaintiff and others;

        b.      Whether Lower Insurance Rates initiated telemarketing calls to cellular phones without the prior express written consent of the called parties;

        c.      Whether Direct Auto Insurance and National General are liable for Lower Insurance Rates' violations of the TCPA;

        d.      Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

e.      Whether Defendants' actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the class; and

f.      Whether Plaintiff and members of the class are entitled to equitable relief, including but not limited to injunctive relief.

67.    Plaintiff's claims are based on the same facts and legal theories as the claims of all class members and therefore are typical of the claims of class members. Plaintiff and the other class members all received telephone calls to their cellular telephone lines through the same or similar dialing system and or the same or similar prerecorded voice.

68.    Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the Class he seeks to represent. Plaintiff is a victim of ATDS telemarketing to his cellular phone using a prerecorded voice without any emergency purpose and without his prior express written consent, and he is committed to the vigorous prosecution of this action. Plaintiff has retained counsel competent and experienced in complex TCPA class action litigation. Plaintiff will vigorously prosecute this action. Plaintiff and his counsel will fairly and adequately protect the interest of members of the class.

69.    Common questions of fact and law predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy. The only individual questions

concern identification of class members, which will be ascertainable from records maintained by Defendants or their agents.

70.     The likelihood that individual class members will prosecute separate actions is remote because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable given the expense involved and the small recoveries available through individual actions.

**COUNT I - VIOLATION OF THE TELEPHONE
CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.***

71.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein, and brings Count I individually and on behalf of the class.

72.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

73.     As a result of Defendants' violations of the TCPA, 47 U.S.C. §227, Plaintiff and members of the class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

74.     Plaintiff and members of the class are also entitled to, and do seek, injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

75.     Defendants' violations were knowing or willful.

76.     If the Court determines that Defendants' actions were knowing or willful, then Plaintiff requests that the Court increase the statutory damages up to three times the amount. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, for himself and all class members, requests the following relief:

A.     Certification of the proposed class;

B.     Appointment of Plaintiff as representative of the class;

C.     Appointment of Plaintiff's counsel as counsel for the class;

D.     An order awarding statutory damages of at least $500 per phone call at issue pursuant to 47 U.S.C. § 227(b)(3)(B);

E.     An order increasing those statutory damages up to three times ($1,500 per call at issue) pursuant to 47 U.S.C. § 227(b)(3)(C);

F.     An order enjoining Defendants from engaging in the same or similar unlawful practices alleged herein;

G.     An order awarding costs of suit;

H.     Leave to amend this Complaint to conform to the evidence presented at trial; and

I.     Orders granting any other relief this Honorable Court deems equitable, proper, and just.

Dated: June 21, 2019                  Respectfully submitted,

                                      KEITH HOBBS, individually and
                                      as the representative of a class of
                                      similarly-situated persons,


                                      /s/ Jonathan B. Piper


Jonathan B. Piper
Tod A. Lewis (pro hac vice to be applied for)
Mara A. Baltabols (pro hac vice to be applied for)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Tel: (312) 658-5500
Fax: (312) 658-5555
service@classlawyers.com

17